## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### AT BECKLEY

GREENBRIER HOTEL CORPORATION;
JAMES C. JUSTICE COMPANIES, INC.;
TWIN FIR ESTATES, LLC; WILCOX
INDUSTRIES, INC.; JUSTICE LOW SEAM
MINING, INC.; PLAYERS CLUB, LLC;
JUSTICE FAMILY GROUP, LLC;
GREENBRIER MEDICAL INSTITUTE, LLC;
GREENBRIER GOLF & TENNIS CLUB
CORPORATION; THE GREENBRIER
SPORTING CLUB DEVELOPMENT CO., INC.;
THE GREENBRIER SPORTING CLUB, INC.;
TAMS MANAGEMENT, INC.; BELLWOOD
CORPORATION; OAKHURST CLUB, LLC;
JAMES C. JUSTICE, II; CATHY L. JUSTICE
and JAMES C. JUSTICE, III,

        Plaintiffs,

v.                                   CIVIL ACTION NO.  5:23-cv-00731

CARTER BANK & TRUST; CARTER
BANKSHARES, INC.; LITZ H. VAN DYKE;
PHYLLIS Q. KARAVATAKIS; MICHAEL R.
BIRD; KEVIN S. BLOOMFIELD; ROBERT
BOLTON; GREGORY W. FELDMANN;
JAMES W. HASKINS; JACOB A. LUTZ, III; E.
WARREN MATTHEWS; CATHARINE L.
MIDKIFF; CURTIS E. STEPHENS and
ELIZABETH LESTER WALSH,

        Defendants.

### MEMORANDUM OPINION AND ORDER

        Pending is Defendants Michael R. Bird, Kevin S. Bloomfield, Robert Bolton,

Gregory W. Feldmann, James W. Haskins, Phyllis Q. Karavatakis, Jacob A. Lutz, III, E. Warren

Matthews, Catharine L. Midkiff, Curtis E. Stephens, Litz H. Van Dyke, and Elizabeth Lester

Walsh's (together, "Director Defendants") Motion to Dismiss Pursuant to *Federal Rule of Civil Procedure* 12(b)(2) for Lack of Personal Jurisdiction [Docs. 16, 17], filed December 6, 2023, and Defendants Carter Bank & Trust and Carter Bankshares, Inc.'s (together, "Carter Bank") Motion to Transfer Venue [Docs. 18, 23], filed December 6, 2023. Plaintiffs responded in opposition to both Motions [Docs. 24, 25], to which Defendants replied [Docs. 26, 27].[1]

## I.

On November 10, 2023, Plaintiffs West Virginia State Governor James C. Justice, II, his wife First Lady Cathy L. Justice, and their son James "Jay" Justice, III, (together, the "Justice Family") as well as several business entities owned by the Justice Family (together, the "Justice Entities"),[2] instituted this action against Carter Bank and several of its directors [Doc. 1]. Carter Bank is incorporated in Virginia, with its principal place of business and headquarters in Martinsville, Virginia. [Doc. 1 at ¶ 35–36]. Although their places of citizenship are not alleged in the Complaint, none of the Director Defendants is a citizen of or domiciled in West Virginia. [Doc. 23 at 5].

Plaintiffs and Carter Bank began their commercial lending relationship in 2001. [Doc. 1 at ¶1]. They entered into numerous loan agreements, promissory notes, guaranties, modifications to deeds of trust, security agreements, subordination agreements, reaffirmations and

---

[1] The Director Defendants have also since filed a Motion to Dismiss the Complaint for Failure to State a Claim [Doc. 30]. On January 17, 2024, the Court stayed remaining motion practice pending adjudication of Defendants' Motion to Dismiss for Lack of Personal Jurisdiction [Docs. 16, 17] and Motion to Transfer Venue [Docs. 18, 23].

[2] The Justice Entities are Greenbrier Hotel Corporation, Players Club, LLC, Greenbrier Golf & Tennis Club Corporation, Greenbrier Medical Institute, LLC, The Greenbrier Sporting Club Development Co., Inc., The Greenbrier Sporting Club, Inc., Justice Family Group, LLC, Oakhurst Club, LLC, Bellwood Corporation, Wilcox Industries, Inc., Tams Management, Inc., Justice Low Seam Mining, Inc., James C. Justice Companies, Inc., and Twin Fir Estates.

2

releases, forbearance agreements, written correspondence, and other loan documents (together, the "Relationship Documents"). [Doc. 1 at ¶¶ 49–50]. By the end of 2016, Carter Bank had loaned Plaintiffs over $775 million. [*Id.* at ¶ 55]. On April 7, 2017, Worth Carter, founder and CEO of Carter Bank, passed away, and Mr. Van Dyke and Ms. Karavatakis "formally took over management of Carter Bank." [Doc. 1 at ¶ 57].

Plaintiffs allege Carter Bank thereafter breached an agreement to fund a real estate project. [Doc. 1 at ¶ 59]. On September 7, 2017, at Jay Justice's request, he and counsel for the Justice Entities met in Martinsville with Mr. Van Dyke, Ms. Karavatakis and Carter Bank's lawyer. [*Id.* at ¶ 60, Doc. 23 at 4]. The purpose of the meeting was to discuss Jay Justice's requests for a $10 million loan to bring "certain coal mining operations back into production to increase their value for a potential sale" and for a "several months" extension of time to make the monthly $1.9 million payments due on "coal loans associated with these [coal mining operations] . . . to facilitate the sale." [Doc. 1 at ¶ 60]. Plaintiffs assert that Mr. Van Dyke, Ms. Karavatakis, and Carter Bank counsel repeatedly confirmed both requests were granted, and that payments on the aforementioned "coal loans" were "effectively, for all intents and purposes, extended." [*Id.* at ¶ 61]. Accordingly, Plaintiffs failed to make a $1.9 million loan payment. [*Id.* at ¶ 61–63].

On October 3, 2017, Carter Bank sent notices of default to the Justice Entities involved. [Doc. 1 at ¶ 61–63]. Plaintiffs assert they were lured into a technical default on the coal loans, and Carter Bank refused an opportunity to cure. [*Id.* at ¶ 64]. Plaintiffs claim they were thus "forced" to execute every security pledge, forbearance agreement, guarantee and release Carter Bank demanded. [*Id.* at ¶ 65]. The Complaint then recounts a four-year tortious and unlawful scheme by Carter Bank beginning in 2017. That course of conduct culminated in Plaintiffs' filed action against Carter Bank on May 31, 2021 (*Bellwood Corporation, et al. v. Carter Bank & Trust,*

3

*et al.* (*"Justice I"*), No. 5:21-cv-00320 (S.D. W. Va. 2021)). [*Id*. at ¶¶ 66–78]. On September 8, 2021, the parties reached a settlement, and the suit was dismissed. [*Id*. at ¶ 79].

Plaintiffs assert Carter Bank's "unlawful and tortious behavior not only continued unabated but in fact worsened." [Doc. 1 at ¶ 79]. They allege Defendants "continued their predatory scheme to perpetuate the flow of interest payments" by (1) demanding "extreme terms intended to hobble Plaintiffs' business operations," (2) preventing Plaintiffs from refinancing their debt, (3) interfering with Plaintiffs' relationships with other lenders, and (4) "making it impossible for Plaintiffs to ever pay off their loans." [*Id*. at ¶¶ 79, 89, 91, 102–11].

On April 21, 2023, Defendants obtained confessed judgments against members of the Justice Family in the Martinsville Circuit Court based on individual personal guaranties of Plaintiffs' loans. [Doc. 1 at ¶ 94, Doc. 23 at 7]. The Justice Family moved to set aside the confessed judgments, contending Carter Bank violated federal banking regulations, breached its contracts with the Justice Family and their businesses, and interfered with their other lender relationships. *Carter Bank & Trust v. James C. Justice, II*, Nos. CL23000110-00 through CL23000120-00, CL23000148-00 through CL23000156-00, and CL23000158-00, 2024 Va. Cir. LEXIS 6, at * (Va. Cir. Ct. January 22, 2024). On January 22, 2024, the Martinsville Circuit Court denied the family's motions to set aside for failing to allege sufficient facts to support their legal conclusion. *Id.* at *3. The court also noted that the motions did not contain any allegation of "any well-recognized defense in the realm of commercial paper, such as fraud, duress, mutual mistake of fact, statute of limitations, or scrivener's error." *Id.* at *4.

On November 10, 2023, Plaintiffs instituted this action, alleging the following claims: (1) Defendants violated the anti-tying provisions of the Bank Holding Company Act ("BHCA"), 12 U.S.C. § 1972, by preventing Plaintiffs from refinancing their debt with other

4

lenders (Count I); (2) Carter Bank "breached the implied covenant of good faith and fair dealing in the execution of its contractual rights and obligations" (Count II); (3) Defendants "willfully and intentionally breached their fiduciary duties to Plaintiffs by refusing to release Plaintiffs' collateral upon the retirement of the loans that the collateral secures" (Count III); and (4) Defendants tortiously interfered with Plaintiffs' business relations "by refusing . . . to release Plaintiffs' collateral so that refinancing could close" (Count IV). [Doc. 1 at ¶¶ 102–30]. Plaintiffs request a declaratory judgment voiding the confessed judgments as violative of due process and public policy (Count V). [*Id.* at ¶¶ 131–36].

On December 6, 2023, the Director Defendants moved to dismiss for lack of personal jurisdiction. [Doc. 16]. That same day, Carter Bank moved to transfer venue to the United States District Court for the Western District of Virginia. [Doc. 18]. Carter Bank contends transfer is warranted pursuant to forum selection clauses contained in the parties' Relationship Documents. Plaintiffs charge the forum selection clauses are unenforceable as having been procured through unlawful leveraging arising from the initial, technical default. Plaintiffs further contend the forum selection clauses do not apply to Plaintiffs' BHCA claim.

## II.

### A.      *Governing Standard*

Pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." "In the typical case not involving a forum-selection clause, a district court considering a § 1404(a) motion (or a *forum non conveniens* motion) must evaluate both the convenience of the parties and

various public-interest considerations." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 62 (2013).

Our Court of Appeals has identified four factors to be considered: "(1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice." *Trs. of the Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015). Generally, "a plaintiff's choice of venue is entitled to substantial weight in determining whether transfer is appropriate." *Id.* (internal quotations omitted). The interest of justice factor is broad and "encompasses public interest factors aimed at systematic integrity and fairness." *Byerson v. Equifax Info. Servs., LLC*, 467 F. Supp. 2d 627, 635 (E.D. Va. 2006) (internal quotations omitted). "It is well settled that the decision whether to transfer a matter to another district is committed to the sound discretion of the district court." *Vass v. Volvo Trucks N. Am., Inc.*, 304 F. Supp. 2d 851, 857 (S.D. W. Va. 2004); *see also FTC v. Pukke*, 53 F.4th 80, 110 (4th Cir. 2022) ("Once a suitable venue is found, the decision whether to transfer is left to the discretion of the trial court."); *accord Plumbing Servs., Inc.*, 791 F.3d at 443 ("We review decisions on whether to transfer venue under 28 U.S.C. § 1404 for abuse of discretion.")

The analysis veers decidedly, however, when the parties have chosen "a valid forum selection clause, which 'represents the parties' agreement as to the most proper forum.'" *Atl. Marine Const. Co.*, 571 U.S. at 63 (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988)); *Whitaker v. Monroe Staffing Servs., LLC*, 42 F.4th 200, 209 (4th Cir. 2022). A forum selection clause is presumed valid and enforceable when it is mandatory in nature. *See BAE Sys. Tech. Sol. & Servs., Inc. v. Republic of Korea's Def. Acquisition Program Admin.*, 884 F.3d 463, 469 (4th Cir. 2018). As the Supreme Court and our Court of Appeals have noted, "courts will

enforce such clauses 'in all but the most exceptional cases.'" *Whitaker*, 42 F.4th at 209–10 (quoting *Atl. Marine*, 571 U.S. at 59).

A forum selection clause is mandatory if "it contains 'specific language of exclusion.'" *Id.* at 472 (internal citations omitted). A resisting party may overcome the presumption of enforceability by demonstrating the forum selection clause is unreasonable under the circumstances. *Albemarle Corp. v. AstraZeneca UK Ltd.*, 628 F.3d 643, 651 (4th Cir. 2010) (citing *The Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 10 (1972)). "When the parties have agreed to a valid forum selection clause, a district court should ordinarily transfer the case to the forum specified," absent "extraordinary circumstances unrelated to the convenience of the parties." *Atl. Marine Const. Co.*, 571 U.S. at 62. "The presence of a valid forum-selection clause [thus] requires district courts to adjust the usual § 1404(a) analysis in three ways." *Id.* at 63.

First, the plaintiff's choice of venue bears no weight. *Atl. Marine Const. Co.*, 571 U.S. at 63. Instead, "the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Id.* Second, the district court "should not consider arguments about the parties' private interests." *Id.* at 64. And "[t]hird, when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules—a factor that in some circumstances may affect public-interest considerations." *Id.* Simply put, only the public interest factors may weigh against transfer. *Id.* Such factors include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Id.* at 64 n.6; *see also Jiali Tang v. Synutra Int'l, Inc.*, 656 F.3d 242, 249 (4th Cir. 2011). But, given that "those factors will rarely defeat a transfer motion, the practical result is that

forum-selection clauses should control except in unusual cases." *Atl. Marine Const. Co.*, 571 U.S. at 64.

**B.      Analysis**

## 1.    Forum Selection Clauses

Carter Bank asserts that between 2017 and 2023, Plaintiffs executed approximately 300 loan documents with forum selection clauses mandating resort only to the Martinsville Circuit Court or the United States District Court for the Western District of Virginia. [Doc. 18 at 11–12]. For example, the May 22, 2017, Loan Agreement provides, "Any legal action or proceeding arising out of or relating to this Agreement or any of the Loan Documents shall be instituted in the Circuit Court of the City of Martinsville, Virginia." [*Id.* Ex. 1.B at 21]. Another example is the November 22, 2017, Forbearance Agreement, which states:

> Each of the Justice Entities hereby irrevocably agrees that any legal action or proceeding arising out of or relating to this Agreement or any of the Loans or Loan Documents shall be instituted exclusively in the Circuit Court of the City of Martinsville, Virginia, or the United States District Court for the Western District of Virginia, assuming such court has jurisdiction. Each of the Justice Entities hereby consents to the jurisdiction of such courts and waives any objection relating to the basis for personal or in rem jurisdiction or to venue which each of the undersigned may now or hereafter have in any such legal action or proceedings.

[*Id.* Ex. 1.C at 9]. Virtually all the parties' Relationship Documents contain the exact same, or substantially similar, forum selection clause.

Between May 2017 and February 16, 2023, Plaintiffs executed nineteen (19) Release and Reaffirmation Agreements (1) reaffirming the legality, validity and binding nature of the respective terms of their loan obligations to Carter Bank, (2) covenanting not to participate in any lawsuit or take any position adverse to Carter Bank relating to the Relationship Documents, and (3) unconditionally releasing Carter Bank from any and all claims they might have against

8

Carter Bank. [Doc. 18, Ex. 1.U]. In each of these Release and Reaffirmation Agreements, Plaintiffs agreed the exclusive venue for any dispute would lie in the Martinsville Circuit Court or the United States District Court for the Western District of Virginia. [*See generally id.* Ex. 1.M, Ex. 1.N–U].

First, the forum selection clauses are mandatory and thus presumptively enforceable. Each clause includes "specific language of exclusion" demonstrating all disputes "shall" and "exclusively" be resolved by the Martinsville Circuit Court or the United States District Court for the Western District of Virginia. *See Unistaff, Inc. v. Koosharem Corp.*, 667 F. Supp. 2d 616, 619 (E.D. Va. 2009) (noting "words such as 'shall,' 'only' or 'exclusive' are often indicators that a clause is mandatory").

Additionally, Plaintiffs are incorrect their BHCA claim does "not aris[e] from or relat[e] to the Relationship Documents." [Doc. 27 at 8]. The relevant forum selection clauses broadly require "*any* legal action or proceeding arising out of or relating to" the specified agreement be instituted in one of the two aforementioned courts. Had the parties not entered into the various loan agreements, Carter Bank would not have sought to exercise its rights under them, and Plaintiffs would not have filed suit under the BHCA or any other law. Plaintiffs' BHCA claim thus transparently arises out of Carter Bank's alleged nonperformance and Plaintiffs' alleged attempt to perform under the agreements. [*See, e.g.*, Doc. 1 at ¶ 77 ("[T]he Greenbrier Entities attempted to engage Carter Bank to discuss the repayment of the obligations. . . . Defendants refused to engage in any substantive discussion. Carter Bank also asked for a Release and Reaffirmation Agreement to be signed as a *precondition* to merely having discussions, without regard to whether a transaction would occur." (emphasis in original)). The BHCA claim concerns the formation and performance of the parties' various loan agreements; the forum selection clauses thus cover Plaintiffs' BHCA claim.

Next, Plaintiffs contend the forum selection clauses are invalid because "their formation was induced by fraud or overreaching." [Doc. 25, Ex. 1 at 5 (quoting *Allen v. Lloyds of London*, 94 F.3d 923, 928 (4th Cir. 1996)]. Although the Supreme Court has consistently accorded choice-of-forum provisions presumptive validity, the presumption of enforceability yields to a clear showing the clause is "'unreasonable' under the circumstances." *The Bremen*, 407 U.S. at 10. "Choice of forum . . . provisions may be found unreasonable if (1) their formation was induced by fraud or overreaching; (2) the complaining party will for all practical purposes be deprived of his day in court because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or (4) their enforcement would contravene a strong public policy of the forum state." *Allen*, 94 F.3d at 928 (internal quotation marks omitted) (first citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991); and then citing *The Bremen*, 407 U.S. at 12–13, 15, 18); *see also Vulcan Chem. Tech., Inc. v. Barker*, 297 F.3d 332, 339 (4th Cir. 2002) ("[A]bsent a showing that the chosen forum is unreasonable or was imposed by fraud or unequal bargaining power, the parties' choice should be enforced.").

Plaintiffs cite to *Dove Air, Inc. v. Bennett*, 226 F. Supp. 2d 771 (W.D.N.C. 2002). In *Dove*, the court declined to enforce a forum selection clause where a 65-year-old man with "severe financial problems" known to the defendant was forced into a joint venture agreement for the sale of aircraft. *Id.* at 774. The court quite understandably found the forum-selection clause unenforceable due to "unequal bargaining power and overreaching" between the parties. *Id.* But it is rather obvious the case has no application to this matter, for at least three reasons.

First, Plaintiffs characterize the case as "applying analogous law." [Doc. 25 at 5]. *Dove* applied North Carolina law, however, and that application was central to the analysis -- a

North Carolina statute prohibits a forum selection clause "in a contract entered into in North Carolina that requires the prosecution of any action or the arbitration of any dispute that arises from the contract to be instituted or heard in another state." N.C. Gen. Stat. § 22B-3. Neither West Virginia nor Virginia have a comparable statute. Indeed, both sovereigns favor the enforcement of forum selection clauses. *See, e.g.*, *Caperton v. A.T. Massey Coal Co.*, 225 W. Va. 128, 141, 690 S.E.2d 332, 335–36 (2009) (noting that forum selection clauses are not contrary to public policy and most courts will enforce them "so long as the clause is fair and reasonable"); *accord* Syl. Pt. 4, *State ex rel. 3C LLC v. O'Briant*, 247 W.Va. 135, 137, 875 S.E.2d 273, 275 (2022) ("If the forum-selection clause was communicated to the resisting party, has mandatory force and covers the claims and parties involved in the dispute, it is presumptively enforceable." (internal quotation marks omitted)); *RMBS Recovery Holdings, I, LLC v. HSBC Bank USA*, 297 Va. 327, 341, 827 S.E.2d 762, 776 (2019) ("Contractual provisions limiting the place or court where potential actions between the parties may be brought are prima facie valid and should be enforced, unless the party challenging enforcement establishes that such provisions are unfair or unreasonable, or are affected by fraud or unequal bargaining power." (internal quotation marks omitted)).

Second, a forum selection clause invalidated on fraud or overreaching grounds requires "the fraud alleged [to] . . . be specific to the forum-selection clause itself. General allegations of fraud with respect to the inducement of the contract as a whole are insufficient to invalidate its forum-selection clause." *State ex rel. 3C LLC*, 247 W.Va. at 145, 875 S.E.2d at 283; *see also RMBS Recovery Holdings*, 297 Va. at 341, 827 S.E.2d at 776 ("[T]he party challenging enforcement [must] establish that such *provisions* are unfair or unreasonable, or are affected by fraud or unequal bargaining power" (emphasis supplied) (quoting *Paul Bus. Sys., Inc. v. Canon*

*U.S.A., Inc.*, 240 Va. 337, 334, 397 S.E.2d 804, 807 (1990)); *Scherk v. Alberto-Culver Co.*, 417

U.S. 506, 519 n.14 (1974) (stating that the federal law fraud exception for forum selection clause

enforceability "does not mean that any time a dispute arising out of a transaction is based upon an

allegation of fraud . . . the clause is unenforceable. Rather, it means that an arbitration or forum[]

selection clause in a contract is not enforceable *if the inclusion of that clause in the contract was

the product of fraud or coercion*" (emphasis supplied)). "By requiring the plaintiff specifically to

allege that the choice clause itself was included in the contract due to fraud . . . courts may ensure

that more general claims of fraud will be litigated *in the chosen forum*, in accordance with the

contractual expectations of the parties." *Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d

1285, 1296 (11th Cir. 1998) (emphasis in original).

       While the Complaint alleges overreach and deception that may render some of the

parties' agreements void, Plaintiffs do not specifically assert the unenforceability of any forum

selection clause. Throughout the relevant time, Plaintiffs have been represented by highly

sophisticated and experienced legal counsel.[3] The Complaint acknowledges as much, admitting

attorneys for the Justice Entities were in communication with Carter Bank's legal team as early as

2017. [Doc. 1 at ¶¶ 60–61]. Thus, any disparities in bargaining positions are mitigated -- if not

entirely vanquished -- by the presence of the highly sophisticated Justice Family members, not to

mention the exceptional in-house and outside counsel at their disposal.

---

[3] During the events leading up to *Justice I* and throughout that litigation, the Justice Family
and Justice Entities were represented by H. Rodgin Cohen and Steven R. Ruby. Mr. Cohen is
senior chair and former chairman of the New York City-based multinational law firm of Sullivan
and Cromwell LLP. Mr. Cohen has over 40-years' experience representing financial institutions
and is considered to be one of the top banking lawyers in the United States. Since the dismissal of
*Justice I*, the Justice Family has been represented by Mr. Ruby. Mr. Ruby is a partner in the
Charleston, West Virginia law firm of Carey, Douglas, Kessler & Ruby PLLC. Mr. Ruby is a
former federal prosecutor and currently maintains a practice that spans the entire gamut of civil
litigation.

Third, and most consequential, Plaintiffs agreed to the same clauses in accords predating the date Plaintiffs pinpoint as the beginning of Defendants' unfair conduct. The parties' prior agreements demonstrate that a Virginia forum selection clause was a standard, mutually agreeable part of their loan agreements. Plaintiffs have thus not shown the parties' continued and repeated use of substantially the same forum selection clauses in virtually all their Relationship Agreements is indicative of fraud or duress. Accordingly, the mandatory forum selection clauses in the Relationship Documents apply to this action in its entirety.

Given the valid forum selection clauses, the Court confines its analysis to the public interest factors. *Atl. Marine Const. Co.*, 571 U.S. at 62. Plaintiffs, however, have failed to identify any exceptional public policy counterbalancing, much less eclipsing, the forum selection clauses. "In all but the most unusual cases . . . 'the interest of justice' is served by holding the parties to their bargain." *Id.* at 66. Accordingly, the Court concludes this matter is not so unusual that the parties' forum selection clause should not control; thus, a transfer of venue is proper.[4]

## 2.   Interest of Justice

Nevertheless, assuming there is no enforceable forum selection clause, the Court may still "[f]or the convenience of parties and witnesses, in the interest of justice," transfer this action "to any other district or division where it might have been brought." 28 U.S.C. § 1404(a);

---

[4] Plaintiffs also contend, "Unless the Court elects to conduct an evidentiary hearing on the matter, a plaintiff need only make a *prima facie* showing of venue to defeat a Rule 12(b)(3) motion." [Doc. 25, Ex. 1 at 3]. But Carter Bank does not move for dismissal pursuant to Rule 12(b)(3) based on improper venue; it instead requests transfer pursuant to 28 U.S.C. § 1404(a); and section "1404(a) does not condition transfer on the initial forum's being 'wrong'" but "permits transfer to any district where venue is also proper . . . or to any other district to which the parties have agreed by contract or stipulation." *Atl. Marine Const. Co.*, 571 U.S. at 59. Section 1404(a) is thus the proper mechanism to enforce the forum selection clauses here.

*see Atl. Marine Const. Co.*, 571 U.S. at 62. The threshold inquiry under § 1404(a) is whether the case "might have been brought" in the proposed transferee district. The analysis requires the transferor court to ascertain if "the transferee [district] ha[s] personal jurisdiction over the defendant and constitute[s] a proper venue . . . [and] . . . [whether] the . . . transferee . . . [has] subject matter jurisdiction. . . ." 15 Charles Alan Wright & Arthur R. Miller, 15 *Fed. Prac. & Proc.* § 3845 (4th ed. 2023).

First, venue is proper where any defendant resides. 28 U.S.C. § 1391(b). A corporation is deemed to reside "in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." *Id.* § 1391(c)(2). Carter Bank's principal place of business is in Martinsville, a city in the Western District of Virginia. Further, seven of the twelve Director Defendants reside in the Western District of Virginia. [Doc. 23 at 5, n.2]. Therefore, venue is proper in the Western District of Virginia.

Second, because the Complaint alleges a federal question under 12 U.S.C. § 1972, [Doc. 1 at ¶ 40], the Western District of Virginia has subject matter jurisdiction. Third, the Western District of Virginia may exercise personal jurisdiction over all Defendants given their residences in Virginia and positions as directors of a Virginia-chartered bank. *See Fidrych et al. v. Marriot Int'l Inc.*, 952 F.3d 124, 133 (4th Cir. 2020). ("[Personal] jurisdiction may be exercised when the defendant has contacts with the forum jurisdiction that are 'so constant and pervasive as to render it essentially at home in the forum State.'" (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014)). The Western District of Virginia is thus a district where the case "might have been brought."

The analysis now moves to the convenience of the parties and various public-interest considerations. First, the Court would accord substantial weight to Plaintiffs' choice of

14

venue. Twelve of the fourteen entity-Plaintiffs are either incorporated or have their principal place of business here, or both.[5] [Doc. 1 at ¶¶ 18–31]. And two of the three individual Plaintiffs, Governor Justice and his wife First Lady Cathy Justice, are West Virginia citizens.[6] [*Id.* at ¶¶ 32– 33]. Thus, the chosen forum is undeniably "the plaintiff[s'] home." *comScore, Inc. v. Integral Ad Sci., Inc.*, 924 F. Supp. 2d 677, 682 (E.D. Va. 2013) (internal quotation marks omitted). It is likewise the case that much of the collateral securing the loans is in the Southern District of West Virginia. Nevertheless, the remaining factors -- witness convenience and access, the convenience of the parties, and the interest of justice -- outweigh those two considerations favoring the Plaintiffs.

First, several fact witnesses -- including all of Defendants' witnesses as well as Jay Justice and in-house counsel for several of the Justice Entities, Stephen W. Ball, -- reside in the Western District of Virginia. Additionally, this action appears to have hatched as a result of the September 2017 meeting in the Western District of Virginia between Jay Justice and Mr. Van Dyke and Ms. Karavatakis, all Virginia residents. [Doc. 1 at ¶ 60; Doc. 23 at 17]. The relevant loan documents, forbearance agreements, release and reaffirmation agreements, and other

---

[5] Plaintiffs Greenbrier Hotel Corporation, Players Club, LLC, Greenbrier Golf & Tennis Club Corporation, Greenbrier Medical Institute, LLC, The Greenbrier Sporting Club Development Co., Inc., The Greenbrier Sporting Club, Inc., Justice Family Group, LLC, and Oakhurst Club, LLC are all headquartered in and have their principal places of business in White Sulphur Springs, West Virginia. [Doc. 1 at ¶¶ 22–28, 31]. Plaintiff Bellwood Corporation is a West Virginia corporation with its principal place of business in West Virginia. [*Id.* at ¶ 30]. Plaintiff Wilcox Industries, Inc. is a West Virginia corporation with its headquarters and principal place of business in West Virginia. [*Id.* at ¶ 20]. Plaintiff Tams Management, Inc. is a West Virginia corporation with its headquarters in Virginia and principal place of business in West Virginia. [*Id.* at ¶ 29]. Plaintiff Justice Low Seam Mining, Inc. is a West Virginia corporation headquartered in Virginia. [*Id.* at ¶ 21]. Plaintiff James C. Justice Companies, Inc. is a Delaware corporation headquartered in Virginia. [*Id.* at ¶ 18]. Plaintiff Twin Fir Estates, LLC is a Virginia limited liability company with its principal place of business in Virginia. [*Id.* at ¶ 19].

[6] Jay Justice resides in Roanoke, Virginia. [Doc. 1 at ¶ 34; Doc. 23 at 17].

Relationship Documents were all negotiated in, drafted in, and delivered to Carter Bank in the Western District of Virginia. [Doc. 18, Ex. 1 at ¶ 45]. The parties also agreed that each of their loan contracts must be construed in accordance with Virginia law. [Doc. 1 at ¶ 113]. And Defendants obtained the all-important confessed judgments -- the heart of Plaintiffs' due process claims -- in the Martinsville Circuit Court. [Doc. 1 at ¶¶ 94, 131–36]. It is apparent the required documents and factual development is more efficiently accomplished in the Western District of Virginia.

Second, not a single Defendant is a West Virginia citizen.[7] And while West Virginia is undoubtedly "home" for many of the Plaintiffs, it matters little. Most of the Justice Entities operate from White Sulfur Springs, West Virginia.[8] White Sulphur Springs is approximately 59 miles from our Beckley Federal Courthouse but only 82 miles from a Western District of Virginia courthouse in Roanoke. Plaintiffs thus reside almost as close to the Western District of Virginia as this Court. Accordingly, the witness convenience, ease of access to relevant

---

[7] Defendants Carter Bank & Trust and Carter Bankshares, Inc., are Virginia corporations with their principal places of business in Virginia. [Doc. 1 at ¶36]. Defendant Litz H. Van Dyke is a member of the Board of Directors of Defendant Carter Bank & Trust and of Defendant Carter Bankshares, Inc., serving in addition as the Chief Executive Officer of both Entities. [*Id.* at ¶ 37]. Defendant Phyllis Q. Karavatakis is a member of the Board of Directors of Defendant Carter Bank & Trust and of Defendant Carter Bankshares, Inc., serving in addition as a Senior Vice President of Defendant Carter Bank & Trust. [*Id.* at ¶ 38]. Defendants Michael R. Bird; Kevin S. Bloomfield; Robert Bolton; Gregory W. Feldmann; James W. Haskins; Jacob A. Lutz, III; E. Warren Matthews; Catharine L. Midkiff; Curtis E. Stephens; and Elizabeth Lester Walsh are members of the Board of Directors of Defendant Carter Bank & Trust, and Defendant Carter Bankshares, Inc. [*Id.* at ¶ 39]. The Complaint does not allege that any of the individual Defendants are domiciled in West Virginia.

[8] Plaintiffs Greenbrier Hotel Corporation; Players Club, LLC; Greenbrier Golf & Tennis Club Corporation; Greenbrier Medical Institute, LLC; The Greenbrier Sporting Club, Inc.; Justice Family Group, LLC; Oakhurst Club, LLC; and The Greenbrier Sporting Club Development Co., Inc. (together, the "Greenbrier Entities") are engaged in the business of hospitality. [Doc. 1 at ¶ 43]. The Greenbrier Entities service, own, and operate Greenbrier Resort located in White Sulphur Springs, West Virginia. [*Id.*].

16

evidence, the convenience of the parties all weighs in favor of transfer.

Finally, transfer serves the interests of justice. As discussed above, the Court anticipates a majority of witnesses and evidence are located in the Western District of Virginia. And inasmuch as Carter Bank's assets are exposed in this litigation, an adverse outcome would deeply affect Virginia's economy, with Carter Bank's headquarters, sixty-nine branches, and hundreds of employees there located. Moreover, the Justice Family moved to set aside the confessed judgments in Virginia state court for many of the same reasons[9] it now asks this Court to declare them void. The parties have also agreed that each of their loan contracts must be construed in accordance with Virginia law.

Accordingly, the Western District of Virginia has a much weightier interest than this District, and transfer ensures trial would occur in "a forum that is at home with the state law that must govern the case." *Gulf Oil v. Gilbert*, 330 U.S. 501, 508–09 (1947).

### III.

Accordingly, the Court **GRANTS** Carter Bank's Motion to Transfer Venue [Doc. 18], **TRANSFERS** this action to the United States District Court for the Western District of Virginia, and, inasmuch as transfer is warranted**, DENIES** without prejudice the Director Defendants' Motions to Dismiss [**Doc. 16**].

---

[9] The allegations set forth in the Justice Family's state court motions to set aside the confessed judgments are virtually identical to the claims asserted in the Complaint herein, namely (1) Carter Bank violated the BHCA, (2) Carter Bank breached its contractual and fiduciary obligations, (3) Carter Bank tortiously interfered with the Justice Family's business expectancies and relationships with other lenders, and (4) the confessions of judgment violate due process, (5) the personal guaranties are void and unenforceable, and (6) Carter Bank's deceitful conduct entitles the Justice Family to damages that "would constitute more than a complete setoff to any amount claimed by [Carter Bank]." *Carter Bank & Trust*, 2024 Va. Cir. LEXIS 6, at *2–3.

The Clerk is directed to send a copy of this written opinion and order to counsel of record and to any unrepresented party.

ENTER:          April 24, 2024

Frank W. Volk
United States District Judge